**LOUCOPANTIS et al. v. THE OLYMPOS et al.**

**No. 5927.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 17, 1949.

Decided Nov. 7, 1949.

William C. Coupland, Norfolk, Va. (Vandeventer & Black, Norfolk, Va., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Fifteen members of the Greek ship Olympos filed a libel against the ship, her master and her owner, in which they sought to recover additional wages, penalties and damages by reason of alleged defaults on the part of the ship relating especially to the charge that she was unfit and unseaworthy.

It is first claimed that the libellants are entitled under the provisions of 46 U.S.C.A. §§ 653 to 658, to a month's wages over and above the wages due and paid them when they left the ship. These sections provide in effect that if the first and second officers, or a majority of the crew of the ship shall, before it leaves the harbor, discover that it is in an unfit condition and shall require such unfitness to be inquired into, the master, upon their request, shall apply to the District Court for the appointment of surveyors; and that the judge upon the application shall appoint three surveyors to examine the ship and report to him as to the condition of the vessel; and upon such report, the judge shall adjudge whether the vessel is unfit to proceed on the intended voyage, and whether repairs can be made and deficiencies supplied; and the master and crew shall in all things conform to the judgment. If such a complaint of unfitness is made in a foreign port, the consul shall appoint the surveyors who shall proceed as aforesaid. If it is found in such case that the vessel is unfit through neglect or design, and the consular officer approves the finding, he shall discharge such of the seamen as request it and require the payment by the master of one month's wages for each seaman over and above the wages then due, or sufficient money for their return to the nearest and most convenient port in the United States, or by furnishing the seamen who desire to be discharged with employment on a ship agreed to by them.

Burt M. Morewitz and J. L. Morewitz, Newport News, Va. (Morewitz & Morewitz, Newport News, Va., on the brief), for appellants.

The claim of the libellants in this respect is based upon testimony to the effect that the toilets for the use of the crew on the ship were foul and unsanitary, that the crew was insufficiently supplied with water and with heat, and that the deck above the forecastle was leaky and permitted the entrance of water into the quarters of the crew in heavy weather. Upon this testimony the District Judge found that the vessel was not unseaworthy, that the living conditions were not as comfortable as they might have been, and during storms there was some leakage of water into the crew's quarters.

■ There was an allegation in the libel that the forecastle of the ship was in need of repairs to make it habitable, and a request that the court order a survey of the living quarters of the crew before the ship should be permitted to sail; but there was no claim for one month's extra wages under the sections of the statute referred to. Moreover, there was no proof that the conditions of the statute had been complied with. The proof did show, however, and the judge found, that on October 3, 1947, while the appellants were represented by an attorney, they were paid their earned wages, received their seamen's books and were discharged by mutual consent under the supervision of the Greek Vice-Consul who had come from New York to Norfolk, conferred with the men, and made an unsuccessful effort to induce them to return with the ship. Upon this evidence it is plain that the sections of the statute referred to have no bearing on this case even if it be supposed that they apply to a Greek ship in a port of the United States, or that, contrary to the findings of the District Judge, the leaky condition of the deck over the forecastle was sufficiently great to amount to unseaworthiness. The contention that if these statutes are not applicable, the rule laid down in The Heroe, D.C.Del., 21 F. 525, governs the case, is also untenable for that case merely held that when a vessel is unable to complete the voyage on account of unseaworthiness, the crew must be paid their wages for the period for which they were engaged.

These considerations also disposed of the additional contention that the appellants were entitled to one month's wages payable under 46 U.S.C.A. § 594, which provides that any seaman who has signed an agreement and is discharged before the commencement of the voyage without fault on his part and without his consent, shall be entitled to receive from the master, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation.

■ A contention that nine of the libellants are entitled to two days waiting time under the provisions of 46 U.S.C.A. § 596 is also devoid of merit. When the ship arrived in Norfolk on September 30, 1947, the men were paid off for the round voyage which had theretofore ended at Antwerp, the payment having been deferred, at their request, until their return to the United States in order that they might be paid in dollars. On October 1 they demanded that the captain consent immediately to a change of conditions on the ship, and when he requested a short delay to consult the owner they refused and left the ship and on the next day filed the libel. In the meantime arrangements were made for the visit of the Greek Vice-Consul from New York and on October 3 in his presence all of the wages that the men had earned were paid and they were discharged from further service by mutual consent. The claim is that the libellants are entitled to two days' pay for each day in the interval between October 1 and October 3. It is obvious that it cannot be held that the delay in the payment was without sufficient cause, as required by the statute, since the right of the men to leave the ship on October 1 was not clearly established, and it was not known until the efforts of the Vice-Consul had failed that they would not return to their employment on the ship. It is noteworthy that although the libel claimed waiting time from October 1, the settlement between the ship and the men on October 3, under which they received the wages that they had earned up to the time that they left the ship, was made while they were

788

represented by the same attorney who appears for them on this appeal.

Two of the libellants, Psomopoulos and Mpounakis, claimed in the libel that they had been ordered detained on board the vessel by the United States immigration authorities although they were entitled on account of the condition of the Olympos to transship on some other vessel, and hence their detention was cruel and inhumane. The evidence shows that the attorneys for the respective parties entered into a stipulation on October 6, 1947, whereby it was agreed that these men be removed from the ship by the immigration authorities, and detained by them until they could be placed on another vessel; and that the owners of the ship would guarantee to the authorities all the costs and expenses of removal, detention and deportation, which were to be paid by libellants. It was further agreed that nothing in the stipulation would be construed as an estoppel against any of the parties or as an admission or waiver of any rights of the parties. The evidence further shows that the two men were removed from the ship on or about October 6 at which time they were paid all of their earned wages and thereafter they were detained in jail at the direction of the immigration authorities for a few days until they were able to ship on other vessels. It is obvious that the ship discharged all of its obligations to the men and was subject to no liability for their detention.

The libel further alleged that three of the appellants were refused hospitalization and medical care, and on that account were each entitled to damages in the sum of $1,000. The evidence, however, completely disproves this charge, and the judge found that none of the libellants were refused proper medical care.

On August 23, 1948, the libellants filed certain requests for admission of facts and genuineness of documents under General Admiralty Rule 32B, 28 U.S.C.A. These requests sought in large part admissions by the respondents as to the truth and legal effect of certain testimony offered by the libellants. Exceptions to these requests were filed on September 2, 1948, in which it is pointed out that the appellants closed their case on April 20, 1948, when they offered the testimony of witnesses before the District Judge, and again on August 31, 1948 in open court. On September 2, 1948, the libellants made a motion for summary judgment. In the final decree the court sustained the exceptions to the requests for admission, overruled the motion of the libellants for summary judgment, and dismissed the libel. In his opinion the District Judge stated that the exceptions were sustained not only because the requests were filed long after the libellants had closed their case in chief, but also because the requests called for the admission of the truth of testimony already given, which it was the province of the court to weigh and to evaluate. The correctness of these rulings is too obvious to justify further discussion.

The contentions of the libellants that they were not paid for extra work performed and that improper deductions from their wages were made for pension fund contribution and taxes are not supported by any testimony on the record.

Affirmed.